**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **JUNE KEITH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**AMERICAN INSURANCE ORGANIZATION, LLC.,** a Pennsylvania company d/b/a iWebQuotes.com<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff June Keith ("Plaintiff Keith" or "Keith") brings this Class Action Complaint and Demand for Jury Trial against Defendant American Insurance Organization, LLC ("Defendant American Insurance" or "American Insurance") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff June Keith is a resident of Bells, Tennessee.

2. Defendant American Insurance is a Pennsylvania company headquartered in Allentown, Pennsylvania. Defendant American Insurance conducts business throughout this District, and throughout the U.S.

1

**JURISDICTION AND VENUE**

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction since the wrongful conduct giving rise to this case was directed to this District by the Defendant. Venue is appropriate in this District since the Plaintiff lives in this District.

**INTRODUCTION**

5.     As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2021, at a rate of 147.6 million per day. www.robocallindex.com (last visited May 3, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. American Insurance is one of the largest health and life insurance wholesalers in the country.

17. American Insurance owns and operates iWebQuotes.com, an insurance marketing website.[3]

18. iWebQuotes is a registered fictitious name of Defendant American Insurance.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] http://www.idealconcepts.com/AboutUs

19. American Insurance makes unsolicited calls to consumers who are registered on the DNC.

20. To make matters worse, Defendant American Insurance continues to place calls to consumers even after they have explicitly told American Insurance to stop calling.

21. For example, in Plaintiff Keith's case, Defendant American Insurance placed multiple calls to her cell phone number which is registered on the DNC despite instructing American Insurance to take her phone number off their calling list.

22. Current and former American Insurance employees have posted numerous complaints regarding calling individiuals without any form of consent.[4][5][6]

> The dialer system bombards people with so many calls, at the beginning every 5 minutes that they are so mad when you finally reach them they just want to be taken off the call list.
> The job is basically babysitting the dialer for 7 hours of the day just entering dispositions. When you do reach an interested person maybe 2 times per day you have to log into a carrier website while the client is on the phone and it takes couple minutes to run the quote for them before they get tired of waiting.

Former Employee, less than 1 year

**Biggest Mistake I've Ever Made**

Feb 26, 2021 - Health Insurance Agent

✗ Recommend   ✗ CEO Approval   ✗ Business Outlook

**Pros**
No pros at all. Run!

**Cons**
Their phone system and the platform are not intuitive at all even though they tell you it is. They say warm lead but it's not. It's an automated dialer system that calls random people and most of the time they are like who the F is this? If you are doing open

**Cons**
CRM system could be more intelligent
Leads aren't great, many people have been called repeatedly even after learning they're not interested or do not have an election period to enroll
Sales quotas are unreasonable

---

[4] https://www.glassdoor.com/Reviews/American-Insurance-Organization-Reviews-E653379.htm
[5] https://www.glassdoor.com/Reviews/American-Insurance-Organization-Reviews-E653379.htm
[6] https://www.glassdoor.com/Reviews/American-Insurance-Organization-Reviews-E653379.htm

23. Many consumers have posted their complaints online about unsolicited telemarketing calls that they have received from Defendant American Insurance, including those callers who identify themselves as iWeb Quotes, American Insurance's legally registered fictitious name:

- "Harassment and persistent calls from lots of different numbers that you have to keep blocking and reporting. I signed up for the no call registry so I could start reporting them to the government in addition to my mobile phone service provider. These people are the scum of the earth!"[7]
- "In 2 days I've gotten 62+ calls from agents. It does not stop. Almost all different numbers from all over the states. I called the first number for the John Paul guy to be taken off the call list and got no answer. I've answered calls to tell them to stop calling and got hung up on 4 times! Some calls came in a minute after the other. Calls start right at 8am and don't stop all day. It's a Saturday and im getting phone calls!"[8]
- "All they do is spam you with phone calls. I got 10 calls within 12 minutes. As soon as you hang up they call you on another number right away. All I wanted was professional information and not to be hounded with calls minute after minute. Would not recommend submitting information for even a quote. Wish I took the time to look at previous reviews before submitting my number."[9]
- "This company harasses you with phone calls if you don't receive a quote from them."[10]
- "I was searching the web to get information about purchasing health insurance. I was expecting to get a quote from the web via email and instead I have gotten 13 phone calls from sales people than less 24 hours trying to sell me insurance. I will continue to block these calls but I am mad that they gave my number to who knows how many reps across the country. One rep told me they have no way to stop these calls because they have no contact with the countless reps across the country that get my information."[11]
- "There's nothing healthy about your business plan of tossing out phone numbers to a pack of wolves using dozens of phone lines to harass someone who NEVER reached out to you for business - does not want your business."[12]
- "People call and leave messages saying to return a call to this number 20-30 times each day. They use VOIP numbers from your phone numbers local area, but agents say to call them back at this number for health insurance quotes.

---

[7] https://www.google.com/search?q=%22iwebquotes%22
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] https://www.revdex.com/reviews/iwebquotescom/630197
[12] *Id.*

5

- iwebquotes.com is what's attached to the number. Telling them to remove your number doesn't work they just hang up."[13]
- "John from iwebquotes with insurance rate quotes. Calls about 10 times a day with a variety of numbers."[14]
- "Get a call before 8am about me looking for health insurance of their website. Knew it was scam right away because I have health insurance."[15]
- "Keeps calling multiple times. Left a voice mail claiming to be from iwebquotes about a claim I never sent. Same person keeps calling using a different number."[16]

24. In response to these calls, Plaintiff brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF KEITH'S ALLEGATIONS

25. Plaintiff Keith registered her cell phone number on the DNC on November 2, 2005.

26. Plaintiff's cell phone number is not associated with a business and is used for personal use only.

27. On March 16, 2021 at 10:52 AM, Plaintiff received a solicitation call to her cell phone from Defendant, from the phone number 731-462-3173.

28. Plaintiff answered this call and spoke to an employee who wanted to provide health insurance quotes.

29. Plaintiff asked the employee to stop calling her and ended the call.

30. Online telemarketing complaint sites indicate the fact that 731-462-3173 is a phone number used by Defendant, as per a call recording captured on Youmail.com:

---

[13] https://www.shouldianswer.com/phone-number/8669994932
[14] *Id.*
[15] *Id.*
[16] https://us.shouldianswer.net/phone-number/7277228964

6



This call maybe monitored and recorded for quality and training purposes. Hi this is Susan can. Hi this is John Paul with my web quotes.com health insurance market place. You just put in a request for health insurance quotes on our website and I like to go over your options with you. We work with all the carriers in the state and I can make sure you get the best plan for the best price. Please call me back at your earliest convenience at 866-999-4932. Again that's 866-999-4932. Thanks and have a great day.

[17]

31. The above referenced voice recording states the company name iWebQuotes.com, the legally fictitious name registered by Defendant American Insurance.

32. Despite telling the employee to stop calling, Plaintiff received a 2nd call from Defendant, from phone number 731-462-3173 at 10:57 AM.

33. Plaintiff did not answer this call.

34. On March 16, 2021 at 11:07 AM, Plaintiff received a 3rd solicitation call to her cell phone from Defendant, this time from phone number 731-504-3320.

35. Plaintiff answered this call and spoke to an employee who wanted to provide health insurance quotes.

36. Plaintiff asked the employee to stop calling her and ended the call.

37. Online telemarketing complaint sites indicate the fact that 731-504-3320 is a phone number used by Defendant, as per a call recording captured on Youmail.com. The agent identities himself as calling from iWebQuotes.com :



This call maybe monitored and recorded for quality and training purposes. Hi this is Susan can. Hi this is John Paul with my web quotes.com health insurance market place. You just put in a request for health insurance quotes on our website and I like to go over your options with you. We work with all the carriers in the state and I can make sure you get the best plan for the best price. Please call me back at your earliest convenience at 866-999-4932. Again that's 866-999-4932. Thanks and have a great day.

[18]

---

[17] https://directory.youmail.com/directory/phone/7314623173
[18] https://directory.youmail.com/directory/phone/7315043320

38. Despite her 2nd verbal request for the calls to stop, Plaintiff received the following unsolicited calls from Defendant:

- March 16, 2021 at 11:22 AM from 731-462-3173;
- March 16, 2021 at 11:52 AM from 731-462-3173;
- March 16, 2021 at 12:42 PM from 731-504-3320; and
- March 16, 2021 at 2:52 PM from 731-462-3173.

39. The unauthorized solicitation telephone calls that Plaintiff received from American Insurance have harmed Plaintiff Keith in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

40. Seeking redress for these injuries, Plaintiff Keith, on behalf of herself and Classes of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

41. Plaintiff Keith brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant or an agent called on behalf of Defendant more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom the Defendant claims they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called after the consumer asked for the calls to stop (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

42. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their

parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Keith anticipates the need to amend the Class definitions following appropriate discovery.

43. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether the Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

45. **Adequate Representation**: Plaintiff Keith will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Keith has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Keith and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Keith nor her counsel have any interest adverse to the Classes.

46.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Keith. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Keith and the Do Not Registry Class)**

47.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

48.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object.  47 U.S.C. § 227(c).

50. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Keith and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

51. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Keith and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

52. As a result of Defendant's conduct as alleged herein, Plaintiff Keith and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

53. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Keith and the Internal Do Not Call Class)**

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

56. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class

on behalf of the Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

57. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

58. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Keith individually and on behalf of the Classes, prays for the following relief:

- An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Keith as the representative of the Classes; and appointing her attorneys as Class Counsel;
- An award of actual and/or statutory damages and costs;
- An award of attorney's fees;
- An order declaring that Defendant's actions, as set out above, violate the TCPA;
- An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and
- Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Keith requests a jury trial.

DATED this 24th day of May, 2021.

**JUNE KEITH**, individually and on behalf of all others similarly situated,

/s/ Bradley G. Kirk
Bradley G. Kirk (017100)
3000 Walnut Grove Road, Suite 200
Memphis, TN 38111
Phone: (901) 206-6163
Email: bgkirklaw@gmail.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff and the Putative Class*

*\*Pro Hac Vice motion forthcoming.*